PIERCE, Justice,
for the Court:
¶ 1. Tadise Seales was convicted of grand larceny following a jury trial in the Neshoba County Circuit Court. Seales appeals his conviction, asserting that the trial court erred in (1) not suppressing his confession and (2) denying his motion for a directed verdict. Finding no merit to either averment, we affirm the trial court.
FACTS AND LEGAL PROCEEDINGS
¶2. On August 19, 2009, Johnny Holl-ingsworth discovered his “Troybilt” tiller was missing from his property located in Philadelphia, Mississippi, and he reported it missing to the Neshoba County Sheriffs Department. A few days later, Hollings-worth noticed his utility trailer was also missing. Before Hollingsworth could report the missing trailer, Sheriffs Investigator Kevin Baysinger contacted Hollings-worth and informed him that both his tiller and trailer had been located at a local pawn shop. Chris Luke, a pawn-shop employee at McKee’s Gun & Pawn, had provided Baysinger information regarding the pawn transaction of the tiller and trailer which had transpired on August 19. This led to Seales’s arrest on September 4, 2009. On September 9, 2009, Seales provided and signed a written statement, transcribed by Baysinger, confessing to the crime charged.
¶ 3. The matter went to trial on July 7, 2010. Hollingsworth testified he had purchased the tiller for approximately $1,200, three years prior to the time he had discovered it missing in August 2009. Holl-ingsworth stated he had bought the trailer for $850, nearly one year prior to his purchase of the tiller. Both items, according to Hollingsworth, were in excellent condition in August 2009. Hollingsworth stated he did not know Seales, nor had he ever seen Seales prior to trial.
¶ 4. Baysinger testified after Hollings-worth. Shortly into Baysinger’s testimony, the trial court conducted a suppression hearing on its own motion, outside the presence of the jury, to determine the admissibility of Seales’s confession. The trial court heard lengthy testimony from both Baysinger and Officer Gordon Adkins of the Philadelphia Police Department. Afterward, the trial court found that Sea-les had been properly Mimndized[1] prior *39 to giving his statement and knew his rights, and Seales had freely and voluntarily waived those rights without any threats or promises of leniency. Accordingly, the trial court ruled Seales’s confession admissible. Despite the trial court’s ruling, the State chose not to introduce Seales’s confession during its case-in-chief.
¶ 5. Luke testified last for the State. According to Luke, Seales came into the pawn shop on August 19 seeking to pawn a tiller and trailer, both of which Seales claimed he owned. Luke entered into a pawn contract with Seales, giving Seales $450 in exchange for the trailer and tiller as collateral, with a thirty-day grace period. Luke, who stated he had sixteen year experience in the pawn business, assessed the total aggregate value of the two items at $900. Luke testified that Seales’s father came into the pawn shop thirty days later and paid off the pawn contract for $562.50; the receipt from that transaction was entered into evidence. Luke also testified that he had returned the tiller and trailer to Hollingsworth shortly after learning they had been stolen.
¶ 6. Seales was the only person to testify on his own behalf at trial. Seales admitted to pawning the tiller and trailer, but he claimed he had bought the two items from a friend for $200 and did not know they were stolen. On cross-examination, Seales acknowledged that he had provided a written statement through Baysinger on September 9, describing how he (Seales) had removed a tiller and trailer from someone’s property on August 19 and had pawned the items immediately thereafter. Seales claimed, however, the only reason he related such a story to Baysinger was because he had been in jail for “six or seven days” and both Baysinger and Adkins had promised him he would be released on bond if he told them “something.” According to Seales, he “was played with,” because despite his cooperation, he remained in jail for another three to four months on an unrelated charge of failing to pay child support.
¶ 7. After this exchange, the State sought to enter Seales’s statement into evidence. The trial court allowed the statement admitted over defense counsel’s objection.
¶ 8. Following the defense’s case-in-chief, the State called Baysinger and Adkins as rebuttal witnesses. Baysinger stated that Seales had made no mention to him of having purchased the tiller and trailer from a friend. Baysinger also testified that he had made no threats or promises to Seales in exchange for Seales’s statement. Adkins likewise testified that he had made no threats or promises to Seales.
¶ 9. Seales moved for a directed verdict after the close of evidence on the ground that the State had failed to present sufficient evidence to sustain a conviction for grand larceny. The trial court denied the motion.
¶ 10. The jury found Seales guilty. This appeal followed, with new counsel representing Seales on appeal. Additional facts will be related as necessary during our discussion of the issues.
DISCUSSION
¶ 11. We address a preliminary matter at the outset. After the appellate record was filed in this case, Seales filed a pro se motion with this Court styled “Motion for Abatement of Appeal Pending Change of Counsel, Modification of the Record, and Supplemental Briefing.” In it, Seales claimed that the trial court transcript omitted “extremely biased and prejudicial statements” by the trial judge, which influenced the jury’s guilty verdict. Seales also claimed he brought the omission to his *40 appellate counsel’s attention, to no avail. Seales requested that this Court issue an order abating the appeal to allow him time to supplement the record and consult with his appellate counsel regarding the matter and to possibly seek new counsel. By order dated July 20, 2011, this Court granted Seales’s motion and suspended the appeal for a period of ninety days. Additionally, on August 22, 2011, Seales filed a motion to correct the record on appeal. By order dated September 16, 2011, the motion was dismissed without prejudice because Seales did not first seek relief from the trial court as required in Rule 10(e) in the Mississippi Rules of Appellate Procedure.
¶ 12. Seales subsequently filed a pro se supplemental brief on October 24, 2011. We now address the issues properly raised and briefed to this Court for review, based on the record before us.
I. Seales’s Confession
¶ 13. Seales argues that the trial court erred in not suppressing his confession, because he was incarcerated “without charges” for four days prior to giving his statement, and because his statement was coerced by the promise of a bail bond, which rendered his statement involuntary.
¶ 14. As mentioned, Seales was arrested on September 4. Based on the testimony given at the suppression hearing, Sea-les apparently was not taken before a judge for an initial appearance until September 8, the day after Labor Day.
¶ 15. Rule 6.03 of the Uniform Rules of Circuit and County Court requires that every person in custody be taken, without unnecessary delay and within forty-eight hours of arrest, before a judicial officer or other person authorized by statute for an initial appearance. A violation of Rule 6.03 alone, however, will not result in the suppression of evidence or reversible error where the defendant was informed of his rights and made a knowing and voluntary waiver. Jones v. State, 841 So.2d 115, 132 (Miss.2003). Thus, “the failure to provide an initial appearance for an accused within the time provided is not, of itself, a reason to suppress a confession.” Id.
¶ 16. This Court addressed a similar charge asserted against the State in the case of Lawrence v. State, 869 So.2d 353 (Miss.2003), where Defendant Larry Lawrence, was not provided an initial appearance in front of a judge until six days after his arrest for burglary. The Mississippi Court of Appeals had affirmed Lawrence’s subsequent burglary conviction on direct appeal, even though it found that both Rule 6.03 and the Fourth Amendment to the United States Constitution had been violated. Id. In reviewing the case on writ of certiorari, we affirmed the decision of the Court of Appeals, but we also wrote to clarify that, although Rule 6.03 had been violated, there was no Fourth Amendment violation. Id. at 353-54.
¶ 17. Here, as in Lawrence, the record reveals that Rule 6.03 was indeed violated. The record also illustrates, however, that evidence was presented at the suppression hearing that Baysinger had informed Sea-les of his Miranda rights and that Seales had expressly waived those rights by signing a written waiver immediately after his arrest on September 4. Seales was again read his rights and signed another waiver shortly prior, to giving his statement on September 9. The only evidence presented in support of Seales’s assertion that he was coerced into giving a statement came during Seales’s trial testimony in front of the jury. The State rebutted Seales’s claim by recalling Baysinger and Adkins to testify, both of whom testified they did not threat *41 en Seales, coerce him, or promise him anything in exchange for his statement.
¶ 18. In Jones, this Court reiterated our scope of review with this type of issue:
[I]n Stokes v. State, 548 So.2d 118, 122 (Miss.1989), this Court held that when the circuit court expressly or implicitly resolves the issue of admissibility of a confession against a defendant, our scope of review is confined to the established limits. In Alexander v. State, 610 So.2d 320 (Miss.1992) (internal citations omitted), this Court set out the standard of review on voluntariness of confessions, finding it is essentially a fact-finding function. So long as the court applies the correct legal standards, “we will not overturn a finding of fact made by a trial judge unless it be clearly erroneous.” Where, on conflicting evidence, the court makes such findings this Court generally must affirm. Id. at 326. See also Veal v. State, 585 So.2d 693, 697 (Miss.1991) (this Court will not reverse trial court on conflicting testimony as to whether coercion used to obtain confession).
Jones v. State, 841 So.2d at 131.
¶ 19. In keeping with Jones and Lawrence, we find no reversible error in the trial court’s decision not to suppress Seales’s confession. The record amply supports the trial court’s finding that Sea-les was informed of his rights and had made a knowing and voluntary waiver of those rights, without any threats or promises, prior to giving his statement. Sea-les’s claim of error is without merit.
II. Directed Verdict
¶ 20. Seales contends the trial court erred by overruling his motion for a directed verdict. He argues the State failed to present sufficient evidence during its case-in-chief to convict him of grand larceny, as the State merely established that he had pawned a tiller and trailer, but failed to show he had taken the two items from Hollingsworth’s property.
¶21. The State argues that Seales is procedurally barred from raising a sufficiency-of-the-evidence claim on appeal. The State submits that Seales waived his appeal of the motion for a directed verdict made at the close of the State’s case-in-chief, when Seales testified on his own behalf and then failed to renew the motion afterwards. The State further argues that despite the bar, Seales’s contention fails on the merits, because the State presented sufficient evidence during its case-in-chief to sustain a conviction for grand larceny.
¶ 22. A motion for a directed verdict challenges the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The motion should be granted only when there is an absence of evidence on one or more elements of the offense charged. Id. A defendant waives the appeal of an overruled motion for directed verdict made at the end of the State’s case when the defendant chooses to go forward with his or her own case. See Stever v. State, 503 So.2d 227, 230 (Miss.1987) (“To do otherwise requires the heart of a gambler and nerves of steel, yet to go forward with the evidence waives this assignment of error.”). Review of a directed-verdict motion made at the end of all evidence presented in the case “requires that we accept as true all evidence favorable to the [S]tate, together with reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond a reasonable doubt,” we must affirm the trial court’s denial of the motion. Id. (quoting Haymond v. State, 478 So.2d 297, 299 (Miss.1985)).
*42 ¶ 23. According to the record, the only motion for a directed verdict in this case came after the close of all trial evidence. Thus, contrary to the State’s contention, we find that Seales preserved his challenge as to the sufficiency of the evidence. But because Seales presented his own case following the State’s, we must consider the sufficiency of the evidence on the basis of all the evidence offered at trial, under the standard of review just related. Id.
¶ 24. Grand larceny is defined as the “taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more.... ” Miss.Code Ann. § 97-17-41(1) (Rev.2006). Here, the evidence clearly established a crime of grand larceny. There is no dispute that Hollingsworth was the actual owner of the tiller and trailer pawned by Seales on August 19, or that the items were stolen from Hollingsworth’s property earlier that same day. Nor is there any argument challenging the evidence presented showing that the items’ aggregate market value on August 19 was at least $500. See id. (“The total value of property taken and carried away by the person from a single victim shall be aggregated in determining the gravity of the offense.”); see also Gunn v. State, 56 So.3d 568, 571 (Miss.2011) (reiterating that “the proper measure of the value of property is the market value of the property at the time and place of the larceny, rather than the original purchase price”). The only question left for this Court to consider is whether sufficient evidence was presented to show that Seales committed the crime.
¶25. “Under Mississippi law, possession of recently stolen property is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt.” Rushing v. State, 461 So.2d 710, 712 (Miss.1984). “In order to give rise to an inference of guilt from the fact of possession, the State has the burden of proving possession by the accused of stolen property to have been personal, recent, unexplained, and exclusive.” Id. Generally, the evidence is sufficient for larceny if the explanation is not reasonable and credible. Presley v. State, 994 So.2d 191, 195 (Miss.Ct.App.2008) (citing Wilson v. State, 237 Miss. 294, 301, 114 So.2d 677, 680 (1959)).
¶ 26. The evidence indisputably showed that Seales was in exclusive possession of Hollingsworth’s tiller and trailer and had claimed ownership of the items on the same day the items had disappeared from Hollingsworth’s property. Two versions of the facts, however, were presented at trial as to how Seales came into possession of Hollingsworth’s tiller and trailer on August 19.
¶ 27. Seales testified on direct examination that an individual by the name of Donnie Shannon had brought the tiller and trailer to him and offered him the items in exchange for “crack rock.” According to Seales, he initially declined the offer; but he then decided to give Shannon $200 for the tiller and trailer. Seales stated that after he bought the items from Shannon, he offered them to his grandfather. When Seales’s grandfather declined the offer, Seales decided to pawn the items to get his money back.
¶ 28. On cross-examination, Seales acknowledged that he had told a different story to Baysinger. According to that account, Seales went to a house located on “Pow-Wow” road, where he had seen a trailer. When Seales backed up to the trailer, he spotted a tiller located by a shed. Seales went over to the tiller, cranked it, and drove it onto the trailer. Seales then went straight to the pawn shop and pawned the items for $450.
*43 ¶ 29. The differing accounts simply presented a jury question. And as this Court has stated before, the jury is the sole judge as to whether or not an explanation given by the accused is reasonable and credible. Pearson v. State, 248 Miss. 353, 363, 158 So.2d 710, 714 (Miss.1963).
¶ 30. Viewing the evidence in the light most favorable to the State, we find there was sufficient evidence to convict Seales of grand larceny. Any rational trier of fact could have found beyond a reasonable doubt that the State had proven all the elements of the crime. This issue is without merit.
CONCLUSION
¶ 31. The judgment and sentence of the Neshoba County Circuit Court are affirmed.
¶ 32. CONVICTION OF GRAND LARCENY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER, AFFIRMED. SENTENCE SHALL BE SERVED WITHOUT THE BENEFIT OF PAROLE, SUSPENSION OR REDUCTION. APPELLANT IS GIVEN CREDIT FOR 259 DAYS OF JAIL TIME.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).